FILED & JUDGMENT ENTERED
Steven T. Salata

Mar  04  2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

In re:                                    )
                                          )     Bankruptcy Case No. 14-31181
**ADAM CHRISTOPHER CALDER**,              )
                                          )     Chapter 13
                          Debtor.         )
                                          )
_____  )

## <u>ORDER</u>

This matter came on for hearing on September 9, 2014 on the Debtor's Motion for Relief from Administrative Order Establishing Procedure for the Disbursement of Postpetition Conduit Mortgage Payments (the "Motion") and the response thereto of the Chapter 13 Trustee, Warren Tadlock. The Chapter 13 Trustee, the Debtor, and his counsel, Bryan Stone, were present at the hearing. The court announced its decision from the bench on September 23, 2014.  The court's jurisdiction is not contested and this Order constitutes its findings of fact and conclusions of law. Having reviewed the pleadings and other matters of record in this case and the testimony and legal arguments presented at the hearing on this matter, the court determines that the Debtor's Motion should be **GRANTED** for the reasons stated herein.

## PROCEDURAL HISTORY

1.      This case was commenced by the filing of a voluntary petition under Chapter 13 of the Bankruptcy Code on July 7, 2014.

2.      The Debtor filed his Chapter 13 Plan on July 7, 2014 and proposed a monthly payment exclusive of the payment on the first mortgage (the "Mortgage") on the Debtor's principal residence.

3.      On July 29, 2014, the Debtor filed the Motion and on August 1, 2014, the Chapter 13 Trustee filed his response thereto.[1]

## FINDINGS OF FACT

4.      At the hearing on this matter, the Debtor and his non-filing spouse, Stacy Calder ("Calder"), offered testimony and evidence showing that Calder is jointly obligated on the Mortgage along with the Debtor, pursuant to the terms of the Mortgage note.  The Debtor and Calder also testified that they had been current on their Mortgage payments for approximately ten years and were current at the time of the Debtor's bankruptcy filing.

5.      Calder testified that she has a credit score of 779.  She further indicated that she chose not to file a joint bankruptcy with her husband to avoid a negative impact on her credit rating so she and her husband could take advantage of her good credit when he emerges from bankruptcy.

---

[1] On June 26, 2009, this court entered its Administrative Order Establishing Procedure for the Disbursement of Post-Petition Conduit Mortgage Payments to be Effective July 1, 2009 (the "Administrative Order").  The Administrative Order has since been incorporated into Local Rule 3003-1, "Procedures for the Disbursement of Conduit Mortgage Payments," in substantially the same form and language. The Debtor's Motion more appropriately springs from Local Rule 3003-1 rather than the Administrative Order.

2

6.      In response, the Chapter 13 Trustee offered testimony from two other standing Chapter 13 trustees in the Western District of North Carolina, Steven Tate and David Gray, and proffered the same as experts regarding issues surrounding the implementation of the conduit mortgage payment program and matters involving Chapter 13 bankruptcies generally.  The court admitted Mr. Tate and Mr. Gray as experts in these respective areas.

7.      As was evidenced by the testimony of Mr. Tate, the conduit mortgage payment program has been overwhelmingly successful and provided significant benefits to both Chapter 13 debtors and mortgage creditors.  Prior to the conduit mortgage payment program, secured mortgage creditors were often compelled to file repeated motions for relief from the automatic stay upon a debtor's mortgage default, resulting in additional attorney's fees, court costs, and significant time spent in court litigating such motions. The advent of the conduit mortgage payment program greatly streamlined those issues by vesting the monitoring and administration of mortgage payments in the Chapter 13 trustees and virtually eliminated disputes regarding debtors' mortgage payment histories.  As a result, mortgage creditors are filing fewer motions for relief from stay, reducing the cost of litigating those motions for mortgage creditors and debtors.

8.      Furthermore, the Chapter 13 trustees testified regarding the benefit received by debtors upon completion of all post-petition conduit mortgage payments by virtue of the procedure required by Fed. R. Bankr. P. 3002.1(f) & (h) for confirming that a debtor cured any mortgage arrearage and made all required post-petition mortgage payments.

9.    Mr. Tate testified regarding the history of the conduit program's implementation and its many benefits to Chapter 13 debtors.   He also acknowledged the standard, initial administrative delay of approximately ninety days from the filing of a bankruptcy to the Chapter 13 Trustee's first distribution of a conduit payment to a mortgage holder.   Mr. Tate conceded the presumed default and resulting negative impact on the credit of a non-filing co-debtor due to the administrative delay in distributing the first conduit payment. Mr. Tate further conceded that such a delay would indeed have a negative impact on Calder's credit in this bankruptcy case. However, he did not agree that the delay in payment and resulting negative impact on Calder's credit were an extraordinary circumstance that justified excluding the conduit payment from the Debtor's Chapter 13 plan because he did not perceive such a scenario as extraordinary.

<u>CONCLUSIONS OF LAW</u>

10.    On June 26, 2009, this Court entered its Administrative Order Establishing Procedure for the Disbursement of Postpetition Conduit Mortgage Payments, to be effective July 1, 2009, which was subsequently adopted as Local Rule 3003-1.   Local Rule 3003-1 establishes the general requirement that a Chapter 13 debtor's monthly mortgage payments must be paid through the Chapter 13 Trustee rather than directly to the mortgage holder (the "Conduit Mortgage Payments").   Local Rule 3003-1(c)(1) allows a debtor to be excused from the Conduit Mortgage Payment "only upon the showing of good cause and extraordinary circumstances sufficient to warrant such an exception," but "[t]he additional cost associated with the Chapter 13 Trustee's statutory commission charged for disbursing the Conduit Mortgage Payments shall not, by itself, constitute good cause and extraordinary circumstances for seeking an exception from the mandatory Conduit Mortgage Payment rules."

4

11.    A Chapter 13 debtor must file a motion and notice it for hearing to be excused from Conduit Mortgage Payments and carries the burden of demonstrating to the court that both good cause and extraordinary circumstances are present to warrant the exclusion.  Id.

12.    The Debtor in this case seeks to be excused from the Conduit Mortgage Payment program for the following reasons:

    a.    the Debtor and Calder have been current on their Mortgage payments for more than ten years;

    b.    at the time of the Debtor's bankruptcy filing, the Mortgage obligation was current;

    c.    the Debtor and Calder are jointly obligated on the Mortgage and equally susceptible to the default provisions contained in the note; and

    d.    as a result of the ninety-day administrative delay in making the first Conduit Mortgage Payment to the mortgage creditor, Calder would suffer a default, late fees, and penalties that would have a negative impact on her credit.

13.    Based on the foregoing, the court concludes that the Debtor has met his burden of demonstrating the existence of "good cause and extraordinary circumstances" to justify exclusion from the Conduit Mortgage Payment program.  If required to make monthly conduit payments through the Chapter 13 Trustee, the Debtor's non-filing spouse will suffer a harm to her credit as a result of her husband's bankruptcy filing.  A bankruptcy filing should not result in such an unintended consequence for a non-filing spouse, especially when the non-filing spouse chose not to file bankruptcy specifically to avoid a negative effect on her credit.  The court finds that the likely resulting harm to Calder's credit given the Calders' solid payment history and the current status of

5

their loan at the time of the bankruptcy filing is the type of extraordinary circumstance contemplated by Local Rule 3003-1.

14.    The court reiterates that the key factors in its decision to grant the Motion are that the Calders had been current on their Mortgage for many years coupled with the fact that they were current when this case was filed.  The Chapter 13 Trustee expressed his concern that granting the Debtor's Motion would open the floodgates to similar motions.  However, the court disagrees and will examine future motions for facts and circumstances substantially similar to the facts and circumstances in this case.

It is therefore **ORDERED** that the Debtor's Motion is **GRANTED**.  Notwithstanding this order, the Trustee may file a motion with the court to have the Debtor's Mortgage payment put back into the conduit program should the Mortgage company notify the Trustee of a default in the Mortgage or if the Debtor's plan payments are in default.

This Order has been signed electronically.                          United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.

6